Number 181353 United States v. John Cascella Good morning. May it please the court, Vanessa Gillian here for Can you wait a second? Sure. Can you pull the microphone closer? Thank you. Ms. Magillan, good morning. Good morning. May it please the court, Vanessa Magillan here for John Cascella. I'd like to reserve five minutes for rebuttal. Mr. Cascella raises three issues on appeal. First, he argues that the blanket Fifth Amendment privilege granted to the confidential informant in this case was overly broad and that the government conducted an independent inquiry of the witness and it was error not to do so. Second, he asserts a Brady and due process violation because the government failed to give him his actual T-Mobile data. And third, he argues that improper closing arguments violated his right to a fair trial. With respect to the blanket Fifth Amendment privilege, the confidential informant in this case clearly had numerous topics that he could have testified about without any danger of incriminating himself. And these facts are clear from the record. The court erred in relying entirely on his counsel's representation that every question that would be posed to him would result in an incriminating answer. It's fairly clear that counsel, how could, if he were to testify, how could the government be put in the position of not fully exploring the nature of the relationship between the confidential informant and the defendant and that full exploration would have required inquiries about their use of drugs, that they were in a relationship. Surely the government would be entitled to explore those aspects of the relationship. Isn't that so? You know, I would argue not. The drug use with Mr. Casella that predated the controlled buying in this case is collateral. And in other cases where the government has called a confidential informant and a defendant has tried to inquire about incriminating drug use or any incriminating subset of the confidential informant, the First Circuit has actually held that that informant could testify to controlled buys, to cooperation with the government. There is no need to inquire about prior drug use, and clearly it didn't go on for very long, because the confidential informant in this case had only been out of prison for a month. A jury doesn't need to know about prior drug use. It's prior misconduct that has nothing to do with the confidential informant's controlled buy from Mr. Casella. The cases that I cite in my brief are Berrio-Landano, First Circuit case, United States v. Stubbart, and the Second Circuit case, United States v. Cardillo, where the shoe is on the other foot and the government has questioned a confidential informant and the defendant has tried to bar all the testimony and the court has said actually no, a controlled buy. The premise that the testimony would be relevant and assist the defense, the only one put forward to the district court judge, seemed to be a type of entrapment defense. Correct. And I don't see, I'm having trouble seeing in the record where you even have the beginnings. I mean, you've got to show both duress, which is an arbitrary proposition. There's nothing in this record particularly at the time it was before the district court the defendant was representing that he was going to testify himself, what evidence was there that would suggest that Bennett offered any prospect of supporting a winnable defense? In other words, what would be the prejudice if you are correct that the ruling itself was erroneous? Well, Mr. Casella proffered that Mr. Bennett was the person who suggested the transaction with the gun. But that doesn't help you. I mean, that just gets you maybe halfway down the first baseline, but you don't get to duress saying that someone suggested. You need them to threaten them, blackmail, put heavy pressure. If Mr. Bennett suggested to Mr. Casella that a gun had to be part of the transaction because the government agent would only buy meth and have a gun be part of the transaction and left Mr. Casella little choice, that would be relevant to an entrapment offense. Let's accept that. I'm not sure that even comes close under our standard of duress, but even assuming hypothetically that it did, we have the transcript of the subsequent conversation with the undercover officer, Perkins, in which we can see the discussion of the gun. And indeed, it's the defendant who is pressing for the gun, not Perkins, and there's no suggestion that the defendant was under any pre-existing pressure from Bennett. So again, I'm having trouble even understanding what the relevance of any of this testimony would have been. There certainly isn't a proffer that the testimony would have said something which would make its exclusion prejudicial. I believe Mr. Casella did proffer that he believed that Mr. Bennett would testify that he, Casella himself, never asked for a gun, that it came at Mr. Bennett's suggestion. The record is very clear that we have a vulnerable, mentally ill defendant here who knows nothing, he knows less than I do, about guns. And a jury may very well have believed the confidential informant had influenced Mr. Casella, that the informant had an interest in mailing Mr. Casella because he had some benefit to gain, and this was the entirety of Mr. Casella's defense. Without the informant, the only evidence that he had was potentially his testimony, he's entitled not to testify, and he should have been entitled to at least inquire of this defendant. It's pretty clear that this confidential informant had something interesting to say because the Sunday before he was supposed to come testify, the government and three other agents called him into their office and interviewed him. This at least should have put the judge on notice, and the judge was aware of this. It's in the record that Mr. Casella had asked for a gun. The judge should have known that there was a vast number of questions and areas of inquiry that Mr. Casella could have asked about, and that the jury should be entitled to hear. Whether the jury would have actually believed this defense is something that we don't need to answer. It's enough here that Mr. Casella is deprived of the defense and that the court did not conduct an inquiry. There's some chance that the jury would have believed it, otherwise you're not establishing prejudice. Sure, but I don't need to show a likelihood of acquittal. I just need to show that Mr. Casella has been deprived of a defense, and that makes this error, it rises to the level of a constitutional violation, and the government has the burden of proving Honolulu has the only reasonable doubt. Counsel, can I ask you about the time remaining? You've made a number of arguments addressed to improper use of the proper closing argument by the prosecution. Among those arguments you make a serious claim that the government commented quite improperly on the failure of the defendant to testify. If one looks at the transcript of the closing argument, it appears that that, I would suggest, is not a fair characterization of what the government did. When it uses the phrase, not once do you hear the defendant, I think that's the focus of your argument, it seems pretty clear that what the government is talking about is how the defendant was behaving and what he was saying in the context of either it's a video or an audio, and the government is referring to how he was acting in the context of that video. It's not saying here in this courtroom you did not hear from him. That's a comment about what's going on in that audio or video recording. Isn't that a fair reading, what was taking place there? It could be one reading, but the danger here is that the other reading is that the prosecutor was commenting on a failure to testify, because any reason to do it... When these kinds of arguments are made, we're supposed to look at the context in which the statement was made. You seem to want us to focus only on the words and not the context in which those words were used. Well, if there are two potential inferences from that statement, I would urge that the one that suggests that Mr. Casella should have testified and denied the bathroom transaction is impermissible and unconstitutional. Certainly the argument that context saves the misconduct does nothing for the argument that the prosecutor made repeatedly that Mr. Casella was a drug dealer. If context saves that kind of statement, a prosecutor can call a murderer a murderer in a murder trial, call a kidnapper a kidnapper, because in every closing argument, those statements will be made in the context of discussion of the evidence. The time is up, but in that case, I'll restore my briefs. You have five minutes for rebuttal. Oh, yes, let me borrow. Good morning. Donald Lockhart for the government. Unless the court has a different preference, I'll address first the defense's claim that the district court abused its discretion when it failed to compel Joseph Bennett to testify over his exercise of discretion. And I'll also address the defense's claim that the district court abused its discretion when it failed to compel Joseph Bennett to testify over his exercise of his Fifth Amendment right against self-incrimination. And the thing to stress here is that any questioning of Bennett, the confidential informant, necessarily would have gotten into his prior methamphetamine-related dealings with the defendant for two separate reasons. First, context. We have a situation where the defense wants to inquire of Bennett about the circumstances in which these undercover deals came to be set up with Detective Perkins. Now, for the jury to evaluate Bennett's testimony in that regard, they really have to know about the background between him and the defendant, which actually leads to this whole series of transactions being set up. Otherwise, you have a situation like the defendant, Bennett rather, is just being beamed down from Mars and just magically appearing in the midst of a drug transaction with Detective Perkins. Suppose they just put him on the stand and said, did the government agents suggest to you that you suggest to my client that he get a gun? You could ask that question in the abstract, but... Well, no, ask it just the way I did, not in the abstract, and he can say yes or no, and how does that implicate his Fifth Amendment rights? Well, because on cross-examination, the government inevitably is going to get to cross-examine Bennett concerning not just that bare question, but... Well, then, if you want to ask about some other transaction, he would plead the Fifth. Yeah, well, but keep in mind, the defense attorney in the district court never proposed that narrow line of questioning. If he had, perhaps that might have presented a different issue, but the defense attorney in the district court never... All he committed to doing was not dragging Bennett through his entire life's history, which is hardly the narrow inquiry that you're positing he would have. Now, under the right set of circumstances, if a defense attorney pitches it that way in the district court, then we might have a different issue, but that's not the way it was pitched here at all. And the second thing we would point out is that if the entrapment defense posits, as it did, that the defendant was a mere drug user, not a dealer, then in any cross-examination of Bennett, if that theme is being furthered, we get to cross-examine Bennett on his prior methamphetamine purchases from the defendant. We get to ask him, you know, how many times did you buy methamphetamine from the defendant, what were the quantities, what were the prices, and so forth and so on, to allot the defense that the defendant was a mere drug user and not a dealer. And that evidence, very clearly, would have exposed Bennett to a criminal prosecution. But as the court points out, this is really a tempest in a teapot, because at the end of the day, any conceivable error in the refusal to order Bennett to testify is clearly harmless beyond a reasonable doubt for several reasons. Number one, you have overwhelming evidence, not just with respect to the drugs, but with respect to the gun transaction. Remember, this is a situation where, and I believe the court has alluded to it, you have a defendant on tape multiple times, and the defendant is not a dealer. He's not saying that he wants the gun. In fact, he says specifically, I want this gun for protection because I've been robbed several times. And in the defendant's recorded confession, which comes after these deals go down, the defendant again admits, I wanted the gun, and not only did I want it, I wanted it for a very specific reason, because a fellow by the name of Country came into my house and robbed me of two balls of methamphetamine. So he clearly wants the gun. He has no reservations about the gun at all, except as to one thing, and that is price. He's cost sensitive, and you get that from the record. He's just a little concerned, am I going to get the right price for the gun? In fact, at one point he comments, so long as the gun is cheap and it fires, I won't miss. So this is not anyone who is reluctant at all to get a gun. On top of that, you have the fact that there is no proffer at all to the effect that Bennett would have even testified that he encouraged the defendant to buy the gun, let alone that Bennett... He said there's no proffer that the district court himself, the district court specifically said that the only relevant aspect of Bennett's proposed testimony is, and he named three things, including whether Bennett suggested to the ATF he could get Mr. Casella to purchase a firearm. Right, but there's no proffer along those lines. The judge said that was the only relevant testimony that he could see. He then didn't say there's been no proffer or you're not putting it on. He said, I'm not going to let you get into that, because if I let you get into that, the prosecution is going to want to cross-examine on his background to get at the point you made previously. Right, but I think, I guess we have a different interpretation of the thrust of what the district court was saying there. From our perspective, this is the district court saying, look, theoretically, the only thing I could see possibly where this line of inquiry could lead is what you just mentioned. That's very different from the court saying, I see, you know, some chance that we could get Mr. Casella to purchase a firearm. This kind of testimony could actually come out. There was no, I mean, it's really up to the defendant to flesh out the issue of what Bennett could say, because after all, it's the defendant himself who is in communication with Bennett. He's the one in the best position as somebody who purportedly was talking with Bennett to say, this is what Bennett said to me. I mean, we shouldn't put the onus on the district court or the government to sort of conjure up scenarios in which Bennett might be able to offer helpful testimony. It should be the defense attorney who says, my client has told me that Bennett told him, unless you buy that gun, XYZ is going to happen, or the agent's not going to go through with the meth transaction unless you also buy the gun. There's some sort of undue pressure within the case law of this circuit. There was no proffer along this line, and really the district court in the remarks that you focused on, I think, is just trying to give the defense the benefit of the doubt in terms of theoretically what questioning might conceivably reveal, which is very different from, I think, the proffer that we should demand in that circumstance. Counsel, I'd like to ask you some questions about the closing argument. There are these repeated references in the closing argument characterizing the defendant as a drug dealer, and the point seems to be, from the government's perspective, that what the jury sees the defendant doing, the way he wants to avoid actually handing over the drugs, he can try situations where the individual on the other side of the purchase has to go somewhere and get the drugs, that kind of behavior, that that is classic drug dealer behavior. Now, what is the evidence in the record that that is classic drug dealer behavior? The argument that the government is trying to make is, what you see there is not what a novice does, is not what somebody who simply is involved in possession, that's what drug dealers do. I mean, I can understand there might be expert testimony to that effect, but all we have here is the characterization of the government that that is what drug dealers do. Where's the evidence for that? It's respectfully, and it's an argument from common sense, and it's a very commonsensical proposition. I think what you have to do if you're interested in the piece of evidence that I believe you're alluding to, which is a portion of the videotape in the car with an undercover detective, where you can see in the video clip the defendant almost magically get the methamphetamine into the front console of the car very quickly. If you focus on that video clip the way the prosecutor did in the closing argument, and drawing the jury's attention to it, what you see is it's really almost miraculously fast that he manages to do it. You almost can't see it happening, and so what the prosecutor is saying is, look, the rapidity of that movement, the seemingly practiced nature of that movement, tells you that this is a guy who's been doing this for a while, and that is directly relevant to rebutting the key defense in this case, which is, I'm just a drug user. I don't know anything about drug dealing. I'm not a drug dealer. We have to be able to combat that argument in our closing. We have to be able to draw the jury's attention to the evidence which contradicts that, and we don't need an expert to say that rapidity of motion is consistent with drug dealing. It's a rather commonsensical thing that if somebody is doing something well and efficiently, it shows they've done it before. What about you? You invoke common sense. What about this statement? This is not something a novice does. This is learned behavior, concealment of what you're doing. This is not his first rodeo. He's been doing this a while. That particular statement, this is not his first rodeo, doesn't that suggest to the jury that the prosecution has knowledge about prior criminal misdeeds of the defendant that they're not aware of? No, it's just another way of making the same basic point, which is that this guy is an experienced drug dealer. He's not just a mere user. And saying it's not his first rodeo, he's been doing this a while, is just another way of saying that same thing. It's another way of making the point rhetorically. Now, if we have an issue on entrapment where the issue is, did the defendant have predisposition to deal drugs, we have to be able to combat that. Sure, you do it by presenting evidence and combats it. You don't do it simply by having the prosecutor say this isn't the first time he's done this. He has this predisposition because he's done it before. You don't say that. You have to show it by evidence. I agree strenuously with that judge, because the prosecutor was referring to a very concrete piece of evidence when he made those remarks. He was referring to the video clip that we've just been discussing. He was not making these remarks out of whole cloth or out of thin air or in the abstract. He was focusing the jury very directly on the evidence, which showed that this guy had been doing this for quite a while, and that's the context in which he makes those remarks. Now, if the prosecutor simply made a closing statement without discussing the evidence and made remarks of that kind, I would agree with you. That would be problematic, for sure. Why is it that because in a particular transaction, he's aware that this is legally problematic and he's trying to protect himself from the possible legal ramifications of what he's doing? Why, if in that instance he has some consciousness of guilt, why does that mean he's done it over and over and over again? This is just the role that you're playing, the role of the defense attorney, which is quite proper, right? The defense attorney's response in its argument should be exactly along the lines that you just said. Now, the government says that this shows repetitive conduct, but it's also consistent with just he was nervous and he wanted to get the drugs into the front console of the car. I mean, these are competing inferences that the lawyer should be able to debate and argue in a closing argument. The fact that the defense has a different riff or take on a particular piece of argument shouldn't proclose us from arguing the inference which is consistent with our theory of the case. So, again, I agree that if the government had made these statements in the abstract without tying them to the evidence, we would be in a different position. But here the government is focusing the jury right in on those clips. And if you want to look at the clips, you perhaps should, because then you'll see just how compelling the argument is. It's really amazingly fast that he gets the drugs into that front console, and it does seem to indicate that this is practiced behavior just as we argue to the jury. So unless the court has further questions, we'll rest on our brief. Thank you. Ms. Gill. I'd just like to address a few points that my brother counsel raised, starting with the closing arguments. The government, to show predisposition, it can argue that the jury should infer a conclusion from the evidence. But those critical words are missing in this closing argument, and the prosecutor repeatedly referred to Mr. Casella as a drug dealer, and this is impermissible. It undermines the fairness and the integrity of judicial proceedings. And prosecutors get trained by reading First Circuit decisions, and they look at what types of comments result in reversals, what types of comments the court pronounces as being improper. And this circuit has a responsibility to prevent improper closing arguments from tainting jury verdicts and infecting trials going forward. This is a problem that is endemic in our judicial system. It's not just in this circuit, and it is not just in Puerto Rico. There are countless decisions about closing arguments where government misconduct is neither identified or sanctioned. I mean, jurors have quite a bit of common sense. They're sitting there in a setting where they know the entire reason that they're in the courtroom is that the government is claiming your client's a drug dealer. That's the indictment, and that's what they're asked to find. So you're saying the prosecution can't argue. I mean, do we have a case saying where the prosecution is accusing you specifically of being a drug dealer, that they can't urge the jury? Certainly they can urge the jury to find that he's a drug dealer. I've cited a case in my briefs, and I'll point it out to you in a letter following argument, but where the court actually identifies precisely this type of statement as being improper. Well, if it's vouching, if they say it in a way that it looks like it's vouching, then you've got the vouching problem. But if they say it in a way where in context what they're saying is the same and the prosecution is saying, based on all this evidence, one can only conclude he's a drug dealer, that's certainly proper, isn't it? Certainly. If a prosecutor is urging a jury to draw a conclusion, that is proper if it's based on evidence. And Judge Lupas pointed out that here there was no expert testimony establishing what a drug dealer typically does. Well, but I think the argument isn't, as I understand the prosecution argument, it's not that this is a type of behavior that drug dealers do. It's that the physical skill with which he accomplishes something on a video, much like if he's shown throwing a dart that hits a bullseye, suggests as a matter of common sense that he's probably done it quite a few times before. I think that's what the argument is. It is, but it's not that. And what's wrong with that as jury argument, that that's the way a jury should view it. A jury puts a lot of faith in what a prosecutor says. And the prosecutor represents the government. And it is very simple for a prosecutor to say to a jury, you should infer this from the evidence that I've shown you. When a prosecutor leaves those simple words out and says, this man is a drug dealer, he is declaring a defendant's guilt. And that is not okay in our judicial system. And it's a simple rule, and they're not difficult words for a prosecutor to use. And when a prosecutor does it deliberately and repeatedly, it infects the verdict. Counsel, we have said in cases that might be a better practice to say what you just said, that the jury could infer from the evidence such and such. But have we cast that as an invariable rule? And if it's not followed, that means that it's tantamount to improper closing argument? I think that this panel should declare that this type of argument is improper in this case and in this context. Whether this panel wants to announce a broader rule is up to you three. But in this case and on these facts, these repeated statements, calling a man a drug dealer repeatedly without asking the jury to infer it from the evidence is simply improper. With respect, I have just 30 seconds left. I just wanted to point out also that in this case, this informant is the government's own informant. And if they had concerns about being able to cross-examine him, they could have granted him state and federal immunity. There is no record evidence that this controlled by involved drug use, and any prior drug use was irrelevant. And the government is not entitled to inquire about uncharged misconduct. And with that, I will rest for my briefs. Thank you. Thank you.